Argued November 9, 1977, affirmed January 24, petition for rehearing denied February 21, 1978

DENNISON et al, *Respondents,*

*v.*

DOREEN et ux, *Appellants.*

(No. 76-0051, SC 25167)

573 P2d 1242

John B. Motley and Steve Anderson, Salem, argued the cause for appellants. With them on the briefs was Motley and Guimond, Salem.

John B. Arnold, Eugene, argued the cause for respondents. With him on the brief were Arthur C. Johnson and Johnson, Harrang and Mercer, Eugene.

Before Denecke, Chief Justice, Holman and Tongue, Justices, and Richardson, Justice Pro Tempore.

RICHARDSON, J., Pro Tempore.

**RICHARDSON, J.,** Pro Tempore.

Defendants appeal the denial of their motion to set aside a decree based on an order of default. The decree awarded plaintiffs an equitable lien on defendants' property involved in the suit. The motion was made on the grounds:

> "1. That the defendants had no notice by the Summons and Complaint to make them aware that a decree would be entered against them for money, in that the decree awards relief different than that prayed for in the Complaint.
>
> "2. That defendants failure to plead was based on excusable neglect.
>
> "3. That defendants have a meritorious defense to plaintiffs' Complaints."

Defendants tendered an answer with their motion which denied most of the allegations of the complaint and alleged that goods and services were exchanged between the parties on a voluntary basis as gifts only. Affidavits of defendants and Opal Thornburg were submitted in support of the motion. No other testimony was offered or received during the hearing on the motion.

We develop the relevant fact situation from the evidence submitted by plaintiffs in establishing a prima facie case, from the court file and the affidavits submitted by defendants. In 1974 defendants solicited the participation of plaintiffs in the formation of a Christian religious association to be known as the "Bonfire Fellowship." Plaintiffs were active in religious activities relating to their faith. Over a course of several months in 1974 the parties developed a close personal relationship founded on their common devout beliefs. Plaintiffs came to rely on the counsel and guidance of defendants in spiritual matters. At the urging of defendants, plaintiffs contributed money, materials and services toward construction of a fellowship hall and other improvements including a pond, tennis court and landscaping on defendants' property.

[ 91 ]

The improvements were to serve as the focal point of the activities of all members of the Bonfire Fellowship. Title to the facility was taken in the name of defendants. It was contemplated that the members of the fellowship would ultimately give all their assets to the fellowship and reside on the property in a Christian commune.

The plaintiffs began to question the religious authority and counsel of defendants and noted their disagreement to the defendants. As a result they were expelled from the fellowship and prohibited from using any of the facilities constructed by their contributions. This was contrary to earlier statements of defendants that all members would share in the fruits of their contributions and fellowship members who became worthy in the eyes of God would become owners of the property.

On January 8, 1976, plaintiffs filed a complaint in equity alleging, inter alia, defendants' ownership of the property, the plaintiffs' contributions solicited by defendants for construction of the facilities to be used by all members, and that the plaintiffs were subsequently denied access to the facilities. The complaint prayed for a decree:

"(1) That Defendants hold the described real property and improvements thereon in trust for the use and benefit of Plaintiffs.

"(2) That Defendants account for the contributions, materials, goods and labor contributed by Plaintiffs to Defendants for the improvement of the real property.

"(3) Such other and further relief as the Court deems just and equitable."

Defendants were properly served with the Complaint and Summons, a subpoena duces tecum and a notice of deposition on January 8, 1976. The summons, in conformity with ORS 15.040, warned the defendants.

"NOTICE TO DEFENDANT[S]: READ THESE PAPERS CAREFULLY! You must 'appear' in this case or

the other side will win automatically. To 'appear' you must file with the court a legal paper called a 'motion,' 'demurrer' or 'answer.' This paper must be given to the court within 10 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff or his attorney to show that the other side has been given a copy of it.

"If you have questions, you should see an attorney immediately."

According to their affidavits both defendants read the papers and then burned them. They supposed, they swore, that the papers were further harassment by the plaintiffs and that they assumed they would have to be further notified before any proceedings could impair their property rights.

Defendants made no appearance in the time required and plaintiffs obtained an order of default on January 20, 1976. Subsequently, on February 19, 1976, the plaintiffs presented evidence to establish a prima facie case as to the allegations of the complaint. During the presentation of the evidence counsel for plaintiffs asked that the court make findings as to the amount of contributions each of the plaintiffs made. He stated plaintiffs were asking that a constructive trust be imposed on the property to secure reimbursement. In a letter, transmitting the proposed decree to the trial court, counsel for plaintiffs stated that the more appropriate remedy would be an equitable lien rather than a constructive trust. The submitted form of decree was signed by the court on March 5, 1976.

In the decree the court made findings that the individual contributions of the plaintiffs totaled approximately $69,000. The decree awarded plaintiffs a lien on defendants' property effective as of January 8, 1976, the date the action was filed. It was further provided that if the lien was not discharged within 120 days after a copy of the decree was served on defendants the property would be sold in execution of the lien. Defendants were properly served with a copy of the decree on March 16, 1976.

Nearly four months later, on July 9, 1976, defendants made their first appearance in this proceeding by a motion to set aside the order of default and the decree.

At the hearing on the motion the defendants made essentially two arguments. First, that the complaint did not give them notice the plaintiffs were seeking a money judgment against them and their neglect in making an appearance was therefore excusable. They made no argument that their failure to appear was otherwise excusable. Secondly, they argued, that the affidavit of Opal Thornburg shows she has a substantial interest in the property and claims to be the true owner of the realty. The decree should be set aside, they contended, in order that she may assert her claim. On appeal they raise an additional argument which will be discussed further in this opinion.

■ The first ground for relief from default urged in the trial court has two aspects. They are intertwined in the defendants' argument and we will separate them for clarity of discussion. The first aspect is that the defendants were misled by the complaint into thinking the plaintiffs sought only a constructive trust and thus their failure to appear and contest the award of a lien on their property is excusable. The logical extension of this argument is that they would have been content to allow imposition of a constructive trust but had they known a lien for $69,000 was sought by plaintiffs they would have appeared and contested such an award. This argument, in light of the conduct of the defendants, is rather hollow. Their affidavits disclose they burned the papers served on them because they supposed them to be merely further harassment by plaintiffs and assumed they would receive further notice before there could be a trial effecting their property rights. Defendant David Doreen stated in his affidavit that he recalled the complaint was "making some kind of a claim which to us seemed preposterous." The clear inference from these affidavits is the

defendants would not have responded regardless of what the complaint alleged or the relief sought. In this posture of the evidence it was not unreasonable for the trial court to conclude that defendants' failure to appear was inexcusable. *See Hiatt v. Congoleum Industries,* 279 Or 569, 569 P2d 567 (1977).

In addition defendants delayed four months after receiving a copy of the decree before making any appearance. The decree informed them specifically that a lien for $69,000 was imposed on their property and that it would be sold after 120 days. If they had elected not to appear because the complaint misled them, logic and reason would dictate a prompt response. They offer no explanation for the nearly four month delay. Whether defendants have acted with diligence in filing a motion to set aside the default judgment is a necessary requirement to be established. *Bella v. Aurora Air, Inc.,* 279 Or 13, 566 P2d 489 (1977); *Burke v. Rachau,* 262 Or 323, 497 P2d 1154 (1972). A four month delay without any explanation or excuse militates strongly against any conclusion the defendants were diligent or that they were misled.

The second aspect of this ground, as we glean from defendants' argument, is that the decree is void because the relief granted was not prayed for in the complaint. The essence of this argument is that the decree granted a money judgment against the defendants, secured by a lien on their property, while the complaint prayed for a constructive trust. The defendants contend a court is not empowered to grant relief not specifically prayed for in the complaint.

A defendant does not have a right of appeal from a valid judgment or decree given after a default. This court has, however, recognized that a void default judgment is appealable. *Kerschner v. Smith,* 121 Or 469, 236 P 272, 256 P 195 (1927). That case involved a fact situation markedly similar to the case here at issue. Plaintiff brought a suit alleging the defendant fraudulently obtained her interest in a rooming house.

The complaint prayed for a decree requiring defendant to reconvey to plaintiff her interest in the property or in lieu thereof that the property be sold and plaintiff receive from the proceeds such amount of money the court finds from the evidence she was entitled to receive. The prayer also asked the court to enjoin defendant from disposing of the property and for general equitable relief. After defendant's default a decree was entered. Prior to the service of the injunction defendant disposed of the property. The court decreed that plaintiff have a judgment against defendant for $1,000, the value of her property interest. Defendant sought to set aside the decree on the ground that a money judgment was not specifically prayed for in the complaint and the decree was thus void. While noting that the purpose of a prayer is to advise the defendant of the precise nature of the demand in order that he may come prepared to meet it, we held a prayer for general equitable relief was sufficient to sustain the award of a money judgment.

> "* * * There is a wealth of authority to the effect that, where there is a prayer for general relief, and for special relief as well, the court is empowered to extend the relief specifically prayed for, or to give such other relief as is warranted by the allegations of the complaint * * *." 121 Or at 474.

The relief awarded was not a departure from the complaint and was appropriate under the evidence presented. *See also Barnes v. Eastern & Western Lbr. Co.,* 205 Or 553, 287 P2d 929 (1955).

■ The second ground for relief from default urged in the trial court revolves around a potential claim of Opal Thornburg. Her affidavit, submitted in support of the motion, claims in substance that the facilities and improvements to the land were made by her contributions. She also claims title to the land was transferred by her to defendants to be held for her benefit. Defendants urge, without elaboration or citation of authority, the suit should be reopened to determine Opal Thornburg's claim. Any claim that

Opal Thornburg may have to the property may be urged in a proceeding of her choice. Such claim, however, is irrelevant to this proceeding and not a ground for relief from default.

■ For the first time on appeal the defendants challenge the equitable jurisdiction of the trial court. While conceding the complaint properly pleaded a cause of suit they contend that plaintiffs abandoned a claim for constructive trust and sought a money judgment. Thus, they urge, plaintiffs had an adequate remedy at law and the complaint in equity should be dismissed. In *Barnes v. Eastern & Western Lbr. Co., supra,* we reviewed a similar challenge to the trial court's equity jurisdiction. In *Barnes,* as in this case, the challenge was based on the court granting relief in the form of a money judgment on a complaint in equity. We held the objection comes too late if it is made for the first time after the trial has begun. The issue must be raised by appropriate pleading. We quoted the applicable rule from *Hudson v. Goldberg,* 123 Or 339, 262 P 223 (1927):

> "It is settled law in this state that an objection to the jurisdiction in equity in the absence of a demurrer on the ground that plaintiff has a plain, adequate and complete remedy at law comes too late, after the defendant has by his answer put himself upon the merits, where the pleadings suggest no such defense * * *." 123 Or at 341.

*See also Lane County Escrow v. Smith, Coe,* 277 Or 273, 560 P2d 608 (1977).

Defendants contend *Barnes* is distinquishable because the case was tried with all parties before the court. Defendants had ample opportunity to appear and urge a jurisdictional challenge. When they defaulted they gave up this opportunity and the matter is determined on the basis of plaintiffs' complaint. In fact, when they first appeared, by the motion to set aside the default, they tendered an answer which would have submitted the matter on the merits to the equity jurisdiction of the court. This answer construed

in the most liberal terms did not suggest a challenge to the court's jurisdiction. In any event, the contention must fail on its merits. As indicated earlier in this opinion, the complaint was properly in equity and the relief granted by the court was within its equitable jurisdiction.

■ A trial court's order allowing or refusing a motion for relief from default is tested only for abuse of the granted discretion and it is incumbent upon defendants to show such abuse. *Bella v. Aurora Air, Inc., supra.* We conclude the trial court did not abuse its discretion in refusing to grant defendants' motion.

Affirmed.